| **Krotman v City of New York** |
|:---:|
| 2026 NY Slip Op 30700(U) |
| February 25, 2026 |
| Supreme Court, New York County |
| Docket Number: Index No. 158967/2023 |
| Judge: Richard Tsai |
| Cases posted with a "30000" identifier, i.e., 2013 NY Slip Op 30001(U), are republished from various New York State and local government sources, including the New York State Unified Court System's eCourts Service. |
| This opinion is uncorrected and not selected for official publication. |

# SUPREME COURT OF THE STATE OF NEW YORK
# NEW YORK COUNTY

PRESENT:    **HON. RICHARD TSAI**                    PART                21

*Justice*

-----------------------------------------------------------------------------X

LAURIE KROTMAN,

                          Plaintiff,

                    - v -

THE CITY OF NEW YORK, THE METROPOLITAN
TRANSPORTATION AUTHORITY (MTA), THE CITY OF
NEW YORK DEPARTMENT OF TRANSPORTATION, NEW
YORK CITY TRANSIT AUTHORITY, NATIONAL RAILROAD
PASSENGER CORPORATION, D/B/A AMTRAK and PORT
AUTHORITY OF NEW YORK AND NEW JERSEY,

                         Defendants.

-----------------------------------------------------------------------------X

| INDEX NO. | 158967/2023 |
|---|---|
| MOTION DATE | 12/19/2025; 01/30/2026 |
| MOTION SEQ. NO. | 001-002 |

**DECISION + ORDER ON MOTION**

The following e-filed documents, listed by NYSCEF document numbers (Motion 001) 31-40, 58-59, 62-65

were read on this motion to/for              JUDGMENT - SUMMARY      .

The following e-filed documents, listed by NYSCEF document numbers (Motion 002) 41-57, 60, 89

were read on this motion to/for              JUDGMENT - SUMMARY      .

Upon the foregoing documents, it is hereby **ORDERED** that the motion for summary judgment by defendants the City of New York and The City of New York Department of Transportation (collectively, the City) (Seq. No. 001) is **GRANTED**, and the complaint is dismissed as against the City, and all cross-claims by and against the City are dismissed; and it is further

**ORDERED** that the motion for summary judgment by defendants the Port Authority of New York and New Jersey ("the Port Authority") (Seq. No. 002) is **GRANTED**, and the complaint is dismissed as against the Port Authority, and all cross-claims by and against the Port Authority are dismissed; and it is further

**ORDERED** that the Clerk is directed to enter judgment in favor of the City and the Port Authority accordingly, with costs and disbursements as taxed by the Clerk upon submission of an appropriate bill of costs; and it is further

**ORDERED** that the action is severed and continued against the remaining defendants.

158967/2023   KROTMAN, LAURIE vs. THE CITY OF NEW YORK ET AL
Motion No.  001 002

Page 1 of 5

[* 1]

In this action, plaintiff Laurie Krotman alleges that, on November 11, 2022 at approximately 9:04 p.m., she was on a "down escalator" inside Penn Station between the street level and the level below when she "was caused to slip/trip and fall on a defectively maintained and dangerous escalator and the area surrounding said escalator" (exhibit A in support of Motion Seq. No. 001 [NYSCEF Doc. No. 33], notice of claim ¶ 3).

Now, the City and the Port Authority both separately move for summary judgment asserting, essentially, that, at the time of plaintiff's accident, they did not own, maintain, operate, or control the subject escalator. Plaintiff opposes both motions.

## DISCUSSION

"To prevail on a motion for summary judgment, the movant must make a prima facie showing by submitting evidence that demonstrates the absence of any material issues of fact. Once that initial showing has been made, the burden shifts to the opposing party to show there are disputed facts requiring a trial. All facts are viewed in the light most favorable to the non-moving party" (*Nellenback v Madison County* 44 NY3d 329, 334 [2025] [internal citations omitted]).

## I.     The City's Motion for Summary Judgment (Motion Seq. No. 001)

Here, the City submits the affidavit of its Senior Title Examiner David Schloss—annexing the underlying title search records that he examined—to establish that, on the date of the accident, Penn Station was owned by defendant National Railroad Passenger Corporation d/b/a Amtrak (Amtrak) (exhibit F in support of Motion Seq. No. 001 [NYSCEF Doc. No. 38). Therefore, the City has established its prima facie entitlement to summary judgment (*Karpovich v City of New York*, 162 AD3d 996, 998 [2d Dept 2018] [affirming dismissal, pursuant to CPLR 3211 [a] [1], where "the appellant submitted deeds that conclusively established that it did not own the premises on the date that the plaintiff claims she was injured"]).

In opposition, plaintiff asserts that Schloss's affidavit only addresses the issue of ownership and "fails to address the issues of control, operation, management, maintenance, possession of the escalator which are as noted, likewise bases of liability" (affirmation in opposition [NYSCEF Doc. No. 58] ¶ 4).

However, the court disagrees with plaintiff that the City was required to prove more than its lack of ownership of the premises to meet its prima facie burden that it owed no duty to plaintiff regarding an escalator located on the premises. Notably, Amtrak admitted in its answer the allegations in paragraph 12 of the complaint, that it "owned, operated, controlled, maintained, inspected, and supervised the entire premises known as Penn Station, located between Seventh Avenue and Eighth Avenues between West 31st Street and West 33rd Street in New York, NY 10001, and

158967/2023   KROTMAN, LAURIE vs. THE CITY OF NEW YORK ET AL          Page 2 of 5
Motion No.  001 002

2 of 5

[* 2]

specifically on the down escalator on the level between the sidewalk and the first level down, in the vicinity of Seventh Avenue and 31st Street" (*see* Exhibit C in support of City's motion, complaint ¶ 12 [NYSCEF Doc. No. 45]; *see* Exhibit G in support of City's motion, Amtrak's answer ¶ 12 [NYSCEF Doc No. 49]).  The complaint does not allege that the premises were leased to the City of New York.  Given this context, "[t]he moving party need not specifically disprove every remotely possible state of facts on which its opponent might win the case" (*Ferluckaj v Goldman Sachs & Co.*, 12 NY3d 316, 320 [2009]).  Once the City established that it was not the premises owner, and Amtrak admitted that it controlled the escalator at issue, the burden shifted to plaintiff to raise a triable issue of fact as a potential basis to hold the City liable.

In this attempt, plaintiff points to a "Revocable Consent Agreement" within the various title documents filed on ACRIS (exhibit A in opposition to Motion Seq. No. 001 [NYSCEF Doc. No. 59]), which plaintiff contends demonstrates the City's "ongoing regulatory authority" over the subject area (affirmation in opposition [NYSCEF Doc. No. 58] ¶ 11).

However, as the City points out in reply, that "Revocable Consent Agreement" related to the City allowing defendant Metropolitan Transportation Authority (MTA) to construct bollards on the sidewalks outside Penn Station.

Furthermore, plaintiff's "mere hope or speculation that evidence sufficient to defeat a motion for summary judgment may be uncovered during the discovery process is insufficient to deny the motion" (*Fisher v City of New York*, 247 NYS3d 735, 737 [2d Dept 2026]).

Therefore, the City's motion is granted.

Because the City can no longer be held liable to plaintiff, the cross-claims that sound in common-law indemnification and contribution are dismissed by operation of law (*see Stone v Williams*, 64 NY2d 639, 642 [1984] [the conclusion that a defendant is not liable to plaintiff necessarily defeats the cross-claims for indemnification and contribution asserted by co-defendants]; *see e.g. Bendel v Ramsey Winch Co.*, 145 AD3d 500, 501 [1st Dept 2016] [in view of the dismissal of the complaint in its entirety as against a defendant, the cross-claims against that defendant are also dismissed]).

Likewise, the City's own cross-claims for common-law indemnification and contribution against the other co-defendants are dismissed as academic (*Rogers v Rockefeller Group Intl.., Inc.*, 38 AD3d 747, 750 [2d Dept 2007]).

## II.    The Port Authority's Motion for Summary Judgment (Seq. No. 002)

In support of its motion, the Port Authority provides an affidavit from Richard T. Gill, the Port Authority's "Principal Property Specialist in the Property Records/Legal Graphics Section of the Law Department" and "the Custodian of the Record Property Maps maintained by the Port Authority" who states that he is "familiar with the various

**158967/2023   KROTMAN, LAURIE vs. THE CITY OF NEW YORK ET AL**                    **Page 3 of 5**
**Motion No.  001 002**

3 of 5

[* 3]

real estate interests of the Port Authority" (exhibit H in Support of Motion Seq. No. 002 [NYSCEF Doc. No. 50], Gill affidavit ¶ 1). Referencing annexed printouts from the New York City Department of Finance website, Gill asserts that "the Port Authority did not own, operate, maintain, or control the location of Plaintiffs alleged accident on or prior to November 11, 2022" (*id.* ¶¶ 6-7). Therefore, the Port Authority has established its prima facie entitlement to summary judgment (*see Karpovich*, 162 AD3d at 998).

In opposition, plaintiff argues that Gill only offers a "conclusory affirmation" which "addresses only fee ownership, but none of the other attributes that create tort liability vis-à-vis a property owner" (affirmation in opposition to Motion Seq. No. 002 [NYSCEF Doc. No. 52] ¶ 10). However, just as with the City, the complaint does not allege that the premises were leased to the Port Authority. Once the Port Authority established that it was not the premises owner, and Amtrak admitted that it controlled the escalator at issue, the burden shifted to plaintiff to raise a triable issue of fact as a potential basis to hold the Port Authority liable (*see Ferluckaj*, 12 NY3d at 320).

Plaintiff seems to suggest that a potential basis for liability for the happening of the alleged escalator accident could be predicated on "the Gateway Development Commission Project Development Agreement, Port Authority's Technical Standards Committee membership, Port Authority's role as a designated Supporting or Executing Partner, Port Authority's funding and oversight of Moynihan Station, or any operational agreements regarding Penn Station" (affirmation in opposition to Motion Seq. No. 002 ¶ 10).[1]

However, the mere fact that the Port Authority might be a partner on nearby projects such as Moynihan Train Hall or have relationships with the other defendants does not raise a triable question of fact as to whether the Port Authority could be held liable for the happening of the accident on this particular escalator inside Penn Station. Plaintiff does not point to any provision of these agreements that would have created a duty upon the Port Authority to maintain the escalator at issue.

Again, plaintiff's "mere hope or speculation" that some additional information might be revealed in the course of discovery is insufficient for the court to deny the Port Authority's motion (*Fisher*, 247 NYS3d at 737).

Therefore, the Port Authority's motion is granted.

---

[1] Plaintiff faulted the Port Authority for not disclosing the Gateway Development Project Development Agreement, but plaintiff stated that this agreement was a matter of public record (affirmation in opposition to Motion Seq. No. 002 ¶ 52). A party is not required to produce documents that are a matter of public record (*Cabellero v City of New York*, 48 AD3d 727, 728 [2d Dept 2008] [the production of copies of all relevant contracts and records should not be compelled to the extent that they are available as a matter of public record]; *Hualde v Otis El. Co.*, 235 AD2d 269, 270 [1st Dept 1997]).

158967/2023   KROTMAN, LAURIE vs. THE CITY OF NEW YORK ET AL          Page 4 of 5
Motion No.  001 002

4 of 5

[* 4]

As the Port Authority can no longer be held liable to plaintiff, the cross-claims against the Port Authority that sound in common-law indemnification and contribution are dismissed by operation of law (*see Stone*, 64 NY2d at 642; *see Bendel*, 145 AD3d at 501). The Port Authority's own cross-claims based on common-law indemnification and contribution against the other co-defendants are also dismissed as academic (*Rogers*, 38 AD3d at 750).

**ENTER:**

20260225175922RTSAI64730B00C57349FDAAEC298661EA82C2

**2/25/2026**

**DATE**

**RICHARD TSAI, J.S.C.**

| CHECK ONE: | | CASE DISPOSED | | X | NON-FINAL DISPOSITION | | |
|---|---|---|---|---|---|---|---|
| Motin Seq. No. 001 | X | GRANTED | | DENIED | | GRANTED IN PART | | OTHER |
| Motin Seq. No. 002 | X | GRANTED | | DENIED | | GRANTED IN PART | | OTHER |
| APPLICATION: | | SETTLE ORDER | | | SUBMIT ORDER | | |
| CHECK IF APPROPRIATE: | | INCLUDES TRANSFER/REASSIGN | | | FIDUCIARY APPOINTMENT | | REFERENCE |

**158967/2023   KROTMAN, LAURIE vs. THE CITY OF NEW YORK ET AL**   **Page 5 of 5**
**Motion No.  001 002**

5 of 5